COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Raphael
Argued at Lexington, Virginia

UNPUBLISHED

GENE RAYMOND LOCKE

v.     Record No. 0540-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
APRIL 5, 2022

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Sidney H. Kirstein for appellant.

Rebecca M. Garcia, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.

Gene Raymond Locke was indicted and subsequently convicted, following a bench trial,

on two counts of shoplifting by altering price tags, third offense, in violation of Code

§§ 18.2-103 and 18.2-104. (Code § 18.2-104 was repealed on July 1, 2021). Locke appeals his

convictions, asserting that the evidence was insufficient to support both convictions. We affirm

in part and reverse in part.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.

Commonwealth*, 295 Va. 469, 472-73 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)). In doing so, we discard any of Locke's conflicting evidence, and regard as true all

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473. At a bench trial, the following evidence was presented.

On April 23, 2020, Walmart asset protection employee Kyle Heuling noticed Locke and a woman "in the store in the clearance aisle taking off the clearance stickers." Heuling did not see the couple place the clearance stickers on other items, but he "believe[d] they were going to put [the stickers] on other items." As a result of his suspicions, Heuling followed Locke and his female companion around Walmart and ultimately to the self-checkout area. Heuling watched the couple begin to ring up items but was called away to "apprehend someone else that was stealing right next to [him]," and did not witness the rest of the transaction.

Later, Heuling decided to review the couple's transaction via security video footage from Walmart's in-store cameras installed at self-checkout kiosks. Using the video footage and the transaction receipt, Heuling determined that Locke left the store on April 23 without paying for some items and without paying full price for other items. At the bench trial, the Commonwealth entered the relevant security footage into evidence but did not enter the receipt. Heuling testified that the difference between the value of the merchandise and the amount paid was $141.19.[2]

Using the credit card information from Locke's April 23 transaction, Heuling searched Walmart's records and discovered that Locke, along with the same female companion, had purchased items with the same card on April 14, 2020. Heuling reviewed the security footage from April 14 as well as Locke's receipt from that transaction, and Heuling testified that the transaction involved "multiple clearance stickers." Again, the Commonwealth entered the video into evidence but did not introduce the relevant receipt.

Security video footage from a self-checkout machine shows that on April 14, Locke placed a product called "JB Weld" and two sodas next to the checkout machine. His female

---

[2] The record does not explain or illustrate how Heuling calculated a loss of $141.19.

companion is pictured in the video holding a steering wheel cover and shorts, both of which had visible yellow clearance stickers. The woman scanned the shorts; Heuling testified that the shorts should have rung up for $14.50 but instead rang up as automobile markers for $2.50. The woman rang up the steering wheel cover but later voided it and did not remove it from the store. The couple scanned the JB Weld, which Heuling testified rang up for $0.50 but should have rung up for $5.57.

Finally, the video also shows that the couple placed two bottles of soda next to the register. It is unclear from the video whether the woman scanned both or only one of the soda bottles before placing both bottles in a bag. The women then used a card to pay for and complete the transaction. Heuling testified that the difference between the amount the couple paid and the amount that they should have paid on April 14 was $20.27.[3] A second video clip introduced by the Commonwealth showed Locke leaving the store with the above-listed items.

Heuling testified that he did not see Locke or his companion switch any stickers on April 14, and neither party presented additional witnesses after Heuling testified. The following quote constituted the entirety of Locke's closing argument:

> Your Honor, if it please the Court, you've seen the evidence and the question is whether the fella in the video was my client. That's the issue and whether you can find that beyond a reasonable doubt. Judge, I would say on the 14th there were some tags that were wrong. There's no evidence of how they became wrong. Perhaps [you] could infer that they switched them out but you have no evidence of that but they were wrong according to the testimony of Mr. Heuling.

Noting that it had "been able to watch the[] videos and listen to . . . the Commonwealth's witness who [it] found to be credible," the circuit court found Locke guilty of both charges. The circuit court did not separately discuss the April 14 and April 23 events. By final order of May 5, 2021,

---

[3] The record does not explain or illustrate how Heuling calculated a loss of $20.27.

the circuit court sentenced Locke to three years' incarceration with two years and five months suspended for the April 14 offense, and three years' incarceration with two years and six months suspended for the April 23 offense, for a total active sentence of thirteen months. Locke timely appealed.

ANALYSIS

I. APPEAL FROM APRIL 23 CONVICTION WAIVED

Locke challenges the sufficiency of the evidence underlying both his convictions. The Commonwealth contends that Locke procedurally defaulted his challenge to the conviction for the April 23 offense by not challenging it in the circuit court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). A defendant may preserve a sufficiency-of-the-evidence challenge through his closing argument during a bench trial. *See Thorne v. Commonwealth*, 66 Va. App. 248, 250 n.1 (2016); *see also Commonwealth v. Herring*, 288 Va. 59, 67-68 (2014).

"In order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006) (quoting *Marlowe v. Commonwealth*, 2 Va. App. 619, 621 (1986)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Locke's closing argument at trial did not specifically address the April 23 offense. Locke's counsel vaguely referenced "the video" without specifying which of the videos he was referring to and then argued that there was no evidence that Locke switched price tags on April 14. It is hard to construe counsel's argument as pertaining to anything but the April 14 offense. Counsel's argument was thus insufficiently specific to preserve his appellate arguments related to the April 23 offense. Locke does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court declines to apply the exceptions *sua sponte*. *See Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*). Locke has therefore waived appellate review of his conviction for the events of April 23, 2020, and we affirm the circuit court's judgment.

## II. STANDARD OF REVIEW

The parties disagree as to the standard of review applicable to Locke's assignment of error for his conviction regarding the events of April 14, 2020. Ordinarily, "[w]hen reviewing the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Yoder v. Commonwealth*, 298 Va. 180, 181-82 (2019) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"

*Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Locke argues that the sole evidence underlying his conviction for the April 14 offense is the security video and that this Court should therefore review the conviction "*de novo . . .* with all facts and circumstances concerning guilt being viewed in the light most favorable to the Commonwealth so long as the totality of the evidence would establish all the essential elements of the alleged crime beyond a reasonable doubt to a rational fact finder." Locke's reply brief clarifies that he desires this Court to make *de novo* findings concerning the content of the April 14 security video.

Locke relies on *Watson-Scott v. Commonwealth*, 298 Va. 251, 255 (2019), for the proposition that where "the essential facts are undisputed" and the Court is presented with the question of how to apply the law to the facts, the Court applies *de novo* review. In *Watson-Scott*, the essential facts were undisputed because it was uncontested that the defendant had fired multiple shots from a handgun down a city street. *Id.* As a result, whether and how the defendant fired the gun—factual determinations—were not at issue; on appeal, the Virginia Supreme Court was only tasked with determining whether the undisputed facts were sufficient to meet the legal standard for malice, a pure question of law.[4] *See id.* at 257-58.

Unlike in *Watson-Scott*, in this case, the essential facts are not undisputed. The circuit court in its role as factfinder decided whether the video evidence and Heuling's testimony proved that Locke altered the price tags on goods for sale on April 14. On appeal, Locke argues that the

---

[4] In a similar case, *Kim v. Commonwealth*, 293 Va. 304, 310-11 (2017), the issue on appeal was whether the road on which the defendant was found was a "public highway" as defined by Code § 46.2-100. In *Kim*, just as in *Watson-Scott*, the essential facts of the case were not in dispute. *See id.* at 311-12. Because the essential facts were undisputed, the Virginia Supreme Court had to decide whether the roadway on which Kim was found met the statutory definition of "highway," a pure question of law. *See id.* As explained above, in the present case, there were facts in dispute.

evidence did not prove that he altered the price tags on goods. Whether Locke altered the tags of certain goods is a question of fact to be determined by the evidence, not a question of law. We are bound by the circuit court's factual determinations unless there is insufficient evidence to support them, or they are plainly wrong. *See Jennings v. Commonwealth*, 67 Va. App. 620, 625 (2017); Code § 8.01-680.

Locke next asks that we give no deference to the circuit court's findings of fact and instead draw our own factual determinations from the video. Such a request is not supported by precedent. *See Commonwealth v. Hilliard*, 270 Va. 42, 50-51 (2005) (holding that this Court erred by making factual findings based on a defendant's tone, voice inflections, and demeanor in a video submitted as evidence at trial). We are bound by our earlier precedent establishing that in a bench trial, the circuit court judge's "major role" is determining the facts of the case. *See Purvy v. Commonwealth*, 59 Va. App. 260, 272 (2011). Further, this Court regards the circuit court's determination of the facts of the case "with the highest degree of appellate deference." *See id.* (quoting *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006)). Accordingly, we will not disturb the circuit court's ruling unless its judgment is plainly wrong or without evidence to support it. *See Jennings*, 67 Va. App. at 625.

### III. WHETHER THE EVIDENCE WAS SUFFICIENT

Turning now to the merits, Code § 18.2-103 provides, in pertinent part:

> Whoever, without authority, with the intention of converting goods or merchandise to his own or another's use without having paid the full purchase price thereof, or of defrauding the owner of the value of the goods or merchandise, (i) willfully conceals or takes possession of the goods or merchandise of any store or other mercantile establishment, or (ii) alters the price tag or other price marking on such goods or merchandise, or transfers the goods from one container to another, or (iii) counsels, assists, aids or abets another in the performance of any of the above acts . . . shall be guilty of petit larceny.

The question we must answer is whether a reasonable factfinder could find that Locke is guilty of altering price tags beyond a reasonable doubt. We have held that the evidence supporting a criminal conviction must exclude every reasonable hypothesis of innocence that flows from the evidence. *See Jennings*, 67 Va. App. at 626 (quoting *Thorne*, 66 Va. App. at 254). If a reasonable factfinder could have rejected Locke's defense theories and found him guilty of altering price tags beyond a reasonable doubt, we must affirm. *See id.*

Here, the evidence related to the April 14 transaction, taken in the light most favorable to the Commonwealth, establishes only that some items had somehow been improperly tagged with a clearance sticker. No evidence was introduced in the circuit court regarding *how* the items in the April 14 transaction came to be improperly priced. Significantly, no one saw Locke or his female companion removing clearance stickers or placing clearance stickers on full-price items on April 14. We hold that no reasonable factfinder could have found beyond a reasonable doubt that Locke altered the price tags on the scant amount of evidence introduced by the Commonwealth. The Commonwealth, after all, bears the burden of proving a defendant's guilt beyond a reasonable doubt. *See Williams v. Commonwealth*, 71 Va. App. 462, 485 (2020) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). The Commonwealth failed to disprove any credible hypotheses of innocence flowing from the evidence. *See Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993) ("The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."). "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Williams*, 71 Va. App. at 485 (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016)). For example, the Commonwealth did not address whether a store employee may

have erroneously placed the clearance stickers on full-price items. We view the evidence and all reasonable inferences to be drawn from it in the light most favorable to the Commonwealth, but here, no evidence was introduced related to how the incorrect stickers were placed. *See Hunley v. Commonwealth*, 30 Va. App. 556, 563 (1999). Even in the light most favorable to the Commonwealth, the only inference that can be reached from the record before us is that at some point, incorrect clearance stickers were placed on a few items that Locke and his companion purchased on April 14, 2020, which is insufficient to convict Locke beyond a reasonable doubt.

The Commonwealth argues that even if the evidence was insufficient to support a conviction under Code § 18.2-103(ii) for altering price tags, Locke should still be convicted under Code § 18.2-103(i) for concealing or taking possession of merchandise because the security video appeared to show that Locke and his companion also removed a bottle of soda from the store without scanning it on the register. *See* Code § 18.2-103(i) (prohibiting willfully concealing or taking possession of goods or merchandise with the intent to convert them to one's own or another's use without having paid the full purchase price).[5] We cannot agree. To the point that the Commonwealth urges us to decide this case under the "right result for the wrong reason" doctrine, we decline to do so because "cases are only proper for application of the right result for the wrong reason doctrine when the evidence in the record supports the new argument on appeal, and the development of additional facts is not necessary." *Perry v. Commonwealth*, 280 Va. 572, 579 (2010). At trial, the Commonwealth never raised the issue of whether Locke stole the bottle of soda nor was there any testimony about whether Locke properly scanned the bottle of soda. As noted, no receipts or other documentation memorializing Locke's purchases were introduced. We review video evidence only for legal sufficiency and do not make *de novo*

---

[5] Locke was indicted under Code § 18.2-103 with no further specificity related to the statute's subsections.

factual conclusions from such video evidence, so it is beyond our purview to determine whether the video showed a bottle of soda being taken. *See Hilliard*, 270 Va. at 49-51. Because determining whether Locke concealed or took possession of a bottle of soda with the intent to defraud the store of its value would require the development of new facts, we do not address the issue on appeal.

CONCLUSION

Locke waived his assignment of error on appeal for his conviction for the events of April 23; however, the circuit court's judgment related to the April 14 conviction was plainly wrong and without evidence to support it. Accordingly, we affirm Locke's conviction for April 23 and reverse his conviction for April 14.

*Affirmed in part and reversed in part.*